[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: Application to Discharge Mechanics Lien
The plaintiff, Elisa O'Brien, brings this application pursuant to General Statutes § 49-35a to discharge a mechanic's lien placed by the defendant HLI Development Co., Inc. (HLI) on O'Brien's real property located at 40 Prospect Street in Greenwich, Connecticut. The lien is in the amount of $32,440.50.
The scope of the issues in dispute between the parties are best understood by noting that the difference between HLI's claimed lien amount and O'Brien's claim that HLI has been overpaid by more than $9,000 exceeds the original contract amount of less than $40,000. The fact that the experienced business people involved provided differing versions of almost every element of the relationship between them posed a number of credibility issues that the court had to resolve, often on incomplete or sparse information.
HLI performed services at Elisa O'Brien's property in connection with a project to alter a single family residence into multi-family housing. HLI CT Page 4989 contracted with Salem Woods Development Corporation which is run by Donald O'Brien, the husband of Elisa O'Brien. The HLI work included constructing walls, excavating, backfilling and paving.
There were a number of knotty issues raised at the hearing of this application which took place over two days in February. At the outset, O'Brien asserted that the lien was invalid because HLI was not licensed as required by the Home Improvement Act, General Statutes § 20-418
(HIA). O'Brien contended that Salem Woods Development was a construction manager, and her agent. The court ruled against this argument during the course of the hearing on the grounds that the evidence showed that HLI was not a contractor, but a subcontractor, and therefore not subject to HLI. Meadows v. Higgins, 249 Conn. 155 (1999). Salem Woods acted like a general contractor and performed some of the work on the premises. In addition, the written contract prepared by Salem Woods was entitled "subcontractor purchase order".
A second issue involved the above contract. Two versions of the purported written contract were submitted as exhibits. Both versions are signed by representatives of the parties, James Scoli for HLI, and Donald O'Brien for Salem Woods, and the two are identical, except for the critical first page which sets out the scope of work and the contract price. Exhibit J submitted by HLI has a contract price of $38,500 and contains certain important limitations on the scope of work, such as a set square footage for paving and a set length and height for a retaining wall. Exhibit 1 submitted by the plaintiff has a slightly larger contract price but did not have limits as to the scope of work to be accomplished.
Scoli of HLI testified that after negotiations with Salem Woods he retyped the first page of the contract and, after agreement with Salem Woods, substituted the revised page and attached it to the rest of the contract in lieu of the original first page. Both parties then signed the contract. According to Donald O'Brien, while HLI did try to negotiate the terms of the contract Salem Woods had prepared, the terms were not changed. Donald O'Brien stated that the first time he saw the "revised" page one on Exhibit J was at the hearing.
The plaintiff also submitted testimony from Donald O'Brien that a principal of HLI, Paul Siconolfi, had stated during settlement discussions that HLI had substituted the first page on Exhibit J after the contracts had been signed. This testimony, which the court allowed over objection, appears to be a statement admissible under Connecticut Code of Evidence § 4-8 (b) (2). The testimony was not rebutted, although Mr. Siconolfi was present in court. O'Brien contends that under the Salem Woods contract, Exhibit I, almost all of the "extra" work claims by MU should be rejected. CT Page 4990
While the above evidence and lack of rebuttal would in many cases be sufficient to disregard the HLI version of the contract, there are other factors which merit consideration. For instance, shortly after the contract was signed in April 2001, HLI forwarded an invoice for $6,850.00 for chipping and removal of ledge rock claiming it was an "extra" to the contract. Salem Woods paid this bill on the day it was received without requesting a change order or any further documentation. At the hearing, however, O'Brien contended that the ledge rock work was covered by the contract, and not an extra.
Second, HLI continued to send invoices to Salem Woods which continued to make payments to HLI in May and June without any evidence that Salem Wood considered these charges to be extra". Indeed Salem Woods employed several rationales later in the summer to not pay HLI invoices, but never stated the bills were unauthorized extra work. On one occasion it said HLI used the wrong requisition form; on another, it stopped payment on a $15,000 check to HLI for the stated reason that HLI had not provided proof of insurance. O'Brien now claims to have overpaid HLI.
On an application to discharge or modify a mechanic's lien General Statutes § 49-35b places the relatively light burden on the lienor to show probable cause that its lien is valid and the heavier burden on the property owner to prove a right to discharge or reduction of the lien by "clear and convincing" evidence. On the basis of the evidence described in the above two paragraphs, HLI has barely met the probable cause standard. On the other hand, O'Brien has not met her burden with respect to the contention that the contract bars the HLI "extras".
On review of HLI's claim of over $30,000 the court finds that HILT constructed a field stone wall on the rear of the lot and there is no dispute that the project was not included in the original contract, and the agreed price was $9,500. The court also concludes that under the relaxed burden of proof for lienors and heightened burden for land owners that HLI has a viable claim for removal of the ledge rock as an extra in the amount of $6,850. The issues surrounding whether, and to what extent, the construction of a Pisa II Unilock wall were very contested; the court finds that part of HLI's claim is allowable, in the amount of $4,000. The remainder of HTI's claims are not allowable as extras" as they appear to be work within the scope of the written contract, whichever version is employed.
The court decides that O'Brien is entitled to an offset of $1,106 for damages to the water main and $7,500 for paving not completed by HLI.
The original contract, after deleted items came to $35,900. The extras CT Page 4991 noted above bring the total to $56,250. The offsets reduce HLI's amount to $47,644. O'Brien has paid HLI $30,150. Therefore the count finds the HLI lien should be reduced to $17,494.
So ordered.
ADAMS, J.